# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>QUIK SERVE FOODS, INC., )<br>)<br>Defendant. )<br>) | Civil No. 04-838 (RCL) |
| QUIK SERVE FOODS INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, )<br>)<br>Defendant. )<br>) | Civil No. 04-687 (RCL) |

## MEMORANDUM OPINION

This matter comes before the Court on Washington Metropolitan Area Transit Authority's ("WMATA") motion [18] to dismiss, or in the alternative, motion for summary judgment in Civil Action No. 04-687 and motion [18] to dismiss, or in the alternative, motion for summary judgment in Civil Action No. 04-838. Quik Serve Foods, Inc. ("Quik Serve") filed a Complaint against WMATA in this Court on April 27, 2004 for breach of contract and tortious interference with prospective business advantage, and for injunctive relief. (Case No. 04-687) On May 4, 2004 WMATA filed a Complaint for Possession of Real Estate in the Landlord and Tenant Branch of the Civil Division of the Superior Court for the District of Columbia (L&T No. L 15842-04). On May 25, 2004, Quik Serve removed WMATA's pending landlord and tenant

action from Superior Court to this Court as Case No. 04-838.  Subsequently, both cases were consolidated in this Court by Order dated July 26, 2004.  Upon consideration of WMATA's motions, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court concludes that both WMATA's motions will be granted.

## BACKGROUND

On or about August 4, 1998, WMATA entered into a commercial ground lease ("Lease") with Ouik Serve for Lots 4, 12-18, 23, 808-813 and 827, Square 416, located at 8th Street and Florida Avenue, NW, Washington, D.C.  (Compl. ¶ 21.)  The Lease required Quik Serve to conduct environmental and soil testing and engineering studies; obtain surveys and title insurance; and secure permits, licenses, and approvals during the due diligence period, or the first 120 days after the execution of the lease.  (Lease ¶ 2.1.)  Thereafter, Quik Serve would build a Checker's restaurant and drive-thru during the development period, or the 210 days following the due diligence period.  (Lease ¶ 2.2.)  The Lease reserved to Quik Serve to right to purchase the leased premises at $475,000 within two years from the execution of the lease, and thereafter at the fair market value.  (Lease ¶ 21.1.)  In addition, Quik Serve preserved the right of first refusal.

> If at any time during the Term of this Lease, WMATA should receive from any third party an acceptable solicited or unsolicited offer to purchase or otherwise acquire the Leased Premises (Square 416) or any WMATA owned property in Squares 393 and 417 in the District of Columbia, WMATA shall submit a written copy of such offer to [Quik Serve], and shall provide [Quik Serve] a sixty (60) day period within which to elect to meet such offer.

(Lease ¶ 21.1.)  The Lease stated that the term of the lease was to begin after the end of the development period.  (Lease ¶ 2.4.)  At the earliest, the term of the Lease would occur 330 days after its execution, or July 1, 1999.

On September 19, 1998, WMATA sold square 417 to People's Improvement Corporation ("PIC"). (Mot. Prelim. Inj. ¶ 8.) In 2003, WMATA entered into negotiations with Howard University for the sale WMATA property in Square 393, but the negotiations did result in a conveyance. (Mot. Dismiss 5.) Quik Serve alleges that on April 7, 2000, it notified WMATA that it exercised its option to purchase the Leased Premises. (Compl. ¶ 35.) WMATA contends that the exercise of this option was deficient. In May 2001, Quik Serve requested from WMATA permission to use the Leased Premises as a temporary parking lot. (Compl. ¶ 39.)

On May 7, 2003, nearly five years after the execution of the lease, WMATA served Quik Serve with a Notice of Default stating that Quik Serve had failed to develop the property pursuant to the terms of the Lease. (Compl. ¶ 44, Opp'n Mot. Prelim. Inj. at 5.) In response, Quik Serve offered to cure the default by obtaining permits, testing, and title insurance. (Mot. Prelim. Inj. Ex. 17.) WMATA gave Quik Serve 120 days to cure the default, ending September 8, 2003 with the expectation that the restaurant would be completed 210 days later, on April 5, 2004. (Mot. Prelim. Inj. ¶ 28.) Quik Serve notified WMATA on October 10, 2003 that Quik Serve would finish the permitting process by December. (Mot. Prelim. Inj. ¶ 30.) In February 2004, WMATA learned that Quik Serve had not filed the necessary applications for permits with the Office of Permits. (Mot. Prelim. Inj. ¶ 37.) Shortly thereafter, WMATA noticed Quik Serve of its intent to terminate the lease. (Mot. Prelim. Inj. ¶ 43). On April 30, 2004 WMATA terminated the lease. (Mot. Prelim. Inj. ¶ 44.)

On April 27, 2004, Quik Serve filed Case No. 04-687 in this Court. WMATA filed a landlord and tenant action for possession of the Leased Premises on May 4, 2004 in the Superior Court of the District of Columbia. On May 25, 2004, Quik Serve removed WMATA's pending landlord and tenant action from Superior Court to this Court as Case No. 04-838. The cases

were consolidated by order of this Court on July 6, 2004. (Dkt. # 5) On December 27, 2004 WMATA filed a motion for partial summary judgment on Counts I and II, and the punitive damage component of Count V, of the complaint in Case No. 04-687 filed by Quik Serve. Subsequently, the Court granted WMATA's motion by Order dated September 22, 2005. (Dkt. # 13) On October 14, 2005 Quik Serve moved to amend its Complaint to delete the two dismissed breach of contract claims and the dismissed claim for punitive damages and add anticipatory breach of contract, violation of the covenant of good faith and fair dealing, and racial discrimination claims against WMATA. (See Amended Compl.) On the same day, Quik Serve also filed a motion for preliminary injunction while WMATA filed this motion to dismiss or in the alternative, for summary judgment on October 25, 2005.

Quik Serve's Complaint alleges seven counts. Counts I and II of the Complaint allege breach of contract, namely, breach of Quik Serve Foods Inc.'s right of first refusal. Count III asserts anticipatory breach of contract and seeks injunctive relief. Count IV claims breach of the implied covenant of good faith and fair dealing. Count V alleges tortious interference with prospective business advantage, and Count VI, alleges unlawful race discrimination under 28 U.S.C. § 1981 (2000).[1] The Court will consider each count in turn.

## DISCUSSION

**A. Standard of Review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether a plaintiff has properly stated a claim upon which relief can be granted. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint need only contain "a short and plain

---

[1] Quik Serve also sought to enjoin WMATA from enforcing the notice of default in Count VII of the complaint. WMATA rightly points out that by removing the action from Superior Court, Quik Serve has effectively stayed the eviction action. By failing to respond, Quik Serve has conceded the point, therefore, the Court will not address Count VII.

statement of the claim showing that the pleader is entitled to relief." Conley v. Gibson, 355 U.S. 41, 47 (1957).  In deciding a motion to dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the non-moving party.  Scheuer, 416 U.S. at 236. Therefore a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley, 355 U.S. at 45-46.

Under Rule 56, a court must grant summary judgment if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact is one that is determinative of the claim or a defense and could thus affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All inferences drawn from the record must be viewed in light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and any factual dispute that does not constitute a genuine issue of material fact is immaterial for summary judgment purposes, Anderson, 477 U.S. at 248.  The burden is on the movant to make the initial showing of the absence of any genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see id. at 325 ("The burden on the moving party may be discharged by [demonstrating] . . . that there is an absence of evidence to support the nonmoving party's case."). The non-moving party must support its position by providing more than "a scintilla of evidence"; the quantum of evidence must be such that a reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 252.  The movant is consequently entitled to a judgment as a matter of law if the non-moving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B.      Count I: Breach of the Right of First Refusal for Square 417**

Quik Serve alleges that WMATA breached the Lease by not permitting Quik Serve to exercise its right of first refusal prior to selling Square 417 to PIC. WMATA avers that Count I is deficient because the offer and sale of the parcel in question occurred before WMATA was required to comply with the first refusal requirement. The Court agrees with WMATA. The Lease did not immediately grant to Quik Serve the ability to exercise this right. Indeed, the Lease only permitted Quik Serve to exercise its right of first refusal after the commencement of the term of the contract which did not begin until at least July 1, 1999. Since WMATA sold square 417 on September 14, 1998, Quik Serve did not have the legal right to exercise its right of first refusal. Therefore, WMATA did not breach the right of first refusal as it pertains to Square 417. Accordingly, Count I of the complaint will be dismissed.

**C.      Count II: Breach of the Right of First Refusal for Square 393**

Quik Serve contends that WMATA violated Quik Serve's right of first refusal for Square 393 when WMATA refused to offer the parcel to Quik Serve. WMATA contends that Count II should be dismissed because the condition precedent never occurred and there was no injury in fact. The Court agrees. WMATA never received an acceptable offer that would trigger the right of first refusal.

In the area of contract interpretation, the existence of a genuine issue of material fact generally turns on whether or not the contract is ambiguous. See, e.g., Young v. Delaney, 647 A.2d 784, 815 (D.C. 1994). Summary judgment is appropriate "when the agreement is unambiguous and where there is no question as to the parties' intent." Bagley v. Found. for the

Pres. of Historic Georgetown, 647 A.2d 1110, 1113 (D.C. 1994) (citing Holland v. Hannan, 456 A.2d 807, 814-15 (D.C. 1983)).  Whether a contract is ambiguous is a question of law for the court.  Holland, 456 A.2d at 815.  A contract is not rendered ambiguous merely because the parties disagree over its proper interpretation.  Id.  Instead, a contract is ambiguous "when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings." Burbridge v. Howard Univ., 305 A.2d 245, 247 (D.C. 1973).  If there is more than one interpretation that a reasonable person could ascribe to the contract, while viewing the contract in context of the circumstances surrounding its making, the contract is ambiguous. See Morgan v. American Univ., 534 A.2d 323, 330 (D.C. 1987). The choice among reasonable interpretations of an ambiguous contract is for the fact-finder to make, based on the evidence presented by the parties to support their respective interpretations. Howard Univ. v. Best, 484 A.2d 958, 966 (D.C. 1984).

Examining the clause in question in light of the Lease as a whole, the Court finds that the language in question is unambiguous.  Article 21 states:

> Tenant shall have the right to purchase the Leased Premises at the appraised fair market value of [$475,000.00] for a period of two years from the Date of Lease Execution. . . . If at any time during the Term of this Lease, WMATA should receive from any third party an acceptable solicited or unsolicited offer to purchase or otherwise acquire the Leased Premises (Square 416) or any WMATA owned property in Squares 393 and 417 in the District of Columbia, WMATA shall submit a written copy of such offer to Tenant, and shall provide Tenant a sixty (60) day period within which to elect to meet such offer.

The contract is clear that every offer would not necessarily trigger the right of first refusal. Rather, only an offer that met a certain standard would activate WMATA's duty to give Quik Serve the opportunity to match the offer.  Furthermore, the language and structure of the contract

indicates that this standard is not objective. The "right of first refusal" is contained in a portion of the Lease that discusses the rights and obligations of WMATA. Such placement indicates that the acceptability of an offer was to be judged by WMATA. This becomes evident when the "right of first refusal" is contrast with the "option" portion of the Lease. In the case of the latter, the option to purchase focuses solely on the rights of Quik Serve. It is clear Quik Serve was to have a limited irrevocable option to purchase Square 416, but the option to purchase Squares 393 and 417 was conditioned upon WMATA's desire to sell such land. See SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 67:85 (4th ed. 1993) ("The 'right of first refusal' or 'preemption' is conditioned upon the willingness of the owner to sell.")

Moreover, the fact that WMATA did not sell Square 393 evinces the absence of a breach. If WMATA had sold the parcel and not informed Quik Serve of an offer, a breach of the right of first refusal would have occurred. However, WMATA did not sell the parcel. It is nearly impossible for Quik Serve to allege a breach, if the event that would ordinarily create such a breach did not occur. Since WMATA did not convey Square 393, nor received an offer that it considered suitable, WMATA did not breach Quik Serve's right of first refusal.

**D.     Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing**

As to Count IV, Quik Serve asserts that WMATA breached the implied covenant of good faith by soliciting proposals to develop Squares 393 and 417. WMATA alleges that the claim for breach of the implied covenant of good faith and fair dealing is not an independent cause of action because other counts incorporate this claim. The Court agrees with WMATA.

The District of Columbia recognizes an independent cause of action for a breach of the implied covenant of good faith. Allworth v. Howard University, 890 A.2d 194, 201 (D.C. 2006). A party may bring suit for breach of the implied covenant when other party to the contract

"evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." Id.  However, the implied covenant may not override the express provisions of the contract. Television Capital Corp. of Mobile v. Paxson Communications Corp., __ A.2d __, 2006 WL 647978, at * 4 (D.C. 2006).  Additionally, breach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under established cause of action.  See Jacobson v. Oliver, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.' ").  The implied covenant of good faith and fair dealing merely prohibits parties from interfering with the performance and other obligations under a contract.

 First, Quik Serve claims that WMATA acted with the requisite bad faith by selling Square 417 to PIC, refusing to sell Square 393 to Quik Serve, and requesting proposals for development of Squares 393 and 416.  These claims of bad faith are identical to the claims in Counts I and II which allege WMATA sold the property without permitting Quik Serve to exercise its right of first refusal.  The claim also mirrors Count III which claims that WMATA is about to breach the contract by requesting proposals to develop the land.  Quik Serve is attempting to get two bites at the same apple.  Second, WMATA's conduct did not rise to the level of bad faith.  As discussed in Sections B, C, and F, WMATA's actions are expressly permitted by the Lease.  Since the implied covenant of good faith cannot override the provisions of a contract, WMATA's conduct was not in bad faith.  Since Quik Serve's allegation of bad faith is identical to other established causes of actions within the complaint, the claim for breach of the implied covenant of good faith and fair dealing cannot survive.  Furthermore, WMATA's

conduct was permissible under the Lease, therefore, Quik Serve cannot demonstrate the requisite bad faith.

### E.     Count V: Tortious Interference with Prospective Business Advantage

Quik Serve contends that WMATA interfered with Quik Serve's attempts to develop, purchase, and resell the Leased Premises. WMATA asserts that these acts were discretionary, and therefore WMATA enjoys sovereign immunity. However, the Court need not address the sovereign immunity question; instead, the Court dismisses the action under Rule 12(b)(6) because Quik Serve has failed to plead facts that, if true, would created a prima facie case of tortuous interference.

First, as matter of law, a party cannot interfere with its own contract. See, e.g., Press v. Howard Univ., 540 A.2d 733, 736 (D.C. 1988). Thus, WMATA's decision not to amend the Lease is not actionable under the doctrine of tortious interference. Likewise, WMATA's failure to sell the Leased Premises to Quik Serve is not actionable under this legal doctrine.

To establish a prima facie case of tortious interference with regard to Squares 393 and 417 Quik Serve must allege: (1) the existence of a valid business relationship or expectancy, (2) knowledge of that relationship or expectancy, (3) intentional interference inducing or causing termination of the relationship or expectancy, and (4) resulting damage. See Bennett Enters., Inc. v. Domino's Pizza, Inc., 45 F.3d 493, 499 (D.C. Cir. 1995). A valid business expectancy is not grounded in an existing contract, but is a commercially reasonable anticipation of a future business relationship. See McManus v. MCI Comm'ns Corp., 748, A.2d 949, 957 (D.C. 2000). A valid business expectancy requires a probability of future contractual or economic relationship and not a mere possibility. See Carr v. Brown, 395 A.2d 79, 84 (D.C. 1978). Additionally, plaintiff must demonstrate more than a general intent or knowledge that the conduct will

interfere; plaintiff must demonstrate strong intent to disrupt the business expectancy through egregious conduct.  See  Bannum, Inc. v. Citizens for a Safe Ward Five, Inc., 383 F. Supp. 2d 32, 45 (D.D.C. 2005) (considering libel,  slander, physical coercion, fraud, misrepresentation, and disparagement as examples of conduct demonstrating strong intent to interfere).

Quik Serve has not alleged facts that, if true, would allow the Court to infer the existence of a prima facie case of tortious interference.  It has not pled sufficient facts to demonstrate the probability of future business expectancy, but merely alleges that it was in discussions with Howard University to sell the Leased Premises, a plot of land which Quik Serve did not even own.  The fact that Howard University made inquiries into purchasing a plot of land that Quik Serve did not own demonstrates that the future business relationship was speculative and not probable.  Moreover, Quik Serve has not alleged any conduct by WMATA that would imply egregious conduct.  At one time Howard University discussed the purchase of land with Quik Serve; later it discussed the purchase of a different plot of land with WMATA.  This fact does not demonstrate egregious conduct and Quik Serve's conclusory allegations are insufficient to fill the void.  Since Quik Serve has failed to plead the shadow of a prima facie case of tortious interference, Count V is dismissed.

     **F.**     **Count VI:  Race Discrimination**

Quik Serve contends that WMATA's failure to amend the lease to allow Quik Serve to temporarily use the Leased Premises as a parking lot constituted race discrimination in violation of 42 U.S.C. § 1981 (2000).  Quik Serve, a minority-owned enterprise, alleges that WMATA allowed similarly situated white-owned business organizations to temporarily use vacant lots for temporary parking.  WMATA responds that the 11th Amendment confers immunity upon WMATA.  The Court agrees with WMATA's immunity response.

As the parties are well aware, WMATA enjoys 11th Amendment immunity from suits arising under federal law.  See Wash. Metro. Area Transit Auth. v. Quik Serve Foods, Inc., 402, F. Supp. 2d 198, 203 (D.D.C. 2005) (Lamberth, J.).  The question is whether Congress abrogated the states' 11th Amendment immunity for Section 1981 claims.  The text of § 1981 does not indicate clear and explicit Congressional intent to abrogate state sovereign immunity.[2]  Moreover, Quik Serve has not directed the Court to any legislative history what would indicate such intent.

Rather, Quik Serve alleges that the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, overruled the Supreme Court's decision in Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 731-732 (1989) which held that § 1983 was the sole remedy against state entities for violations of the rights contained in § 1981 and that § 1981 cannot, on its own, provide for an independent cause of action against governmental entities.  Quik Serve relies exclusively on the Ninth Circuit's decision in Fed'n of African-American Contractors v. City of Oakland, which found a private cause of action against state actors.  96 F.3d 1204, 1212 (9th Cir. 1996).  The court inferred from "impairment under color of State law" that Congress intended to create a an additional remedy to a § 1983 claim.

---

[2] § 1981 reads, in relevant part:
    (a) Statement of equal rights
    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings or the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
    (b) "Make and enforce contracts" defined
    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
    (c) Protection against impairment
    The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Case 1:04-cv-00687-RCL   Document 25   Filed 04/28/06   Page 13 of 14

However, neither the amendments to the statute nor the legislative history of the Civil Rights Act of 1991 indicate clear Congressional intent to overrule Jett. See Dennis v. Country of Fairfax, 55 F.3d 151, 156 n.1 (4th Cir. 1995) (indicating that the amendment to § 1981 was meant to codify Runyon v. McCrary, 427 U.S. 160 (1976), and not overrule Jett); accord Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000). "The judicial power to imply or create remedies . . . should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute." Jett, 491 U.S. at 732. To abrogate states' sovereign immunity, Congress must express its clear intention to do so, and it may only do so pursuant to a valid exercise of power. See Edelman v. Jordan, 415 U.S. 651, 673 (1974). Since Congress did not indicate a desire to overrule Jett, or that it wished to create a private right of action against state actors outside of § 1983, this Court declines to discover such a right.

### G.     Count III: Anticipatory Breach of Contract, Preliminary Injunction

Quik Serve alleges that WMATA anticipatorily breached the contract by requesting proposals to develop the Leased Premises and Squares 393 and 416 after the commencement of this litigation. The Court disagrees. First, the Lease has been terminated. The parties are now before the Court to determine whether the termination was invalid and whether any remedies flow therefrom. The Court doubts whether the action for anticipatory breach of contract is proper. An anticipatory breach occurs when a promisor repudiates by indicating that when the time for performance arises, it will not fulfill its promise. See Reiman v. Int'l Hospitality Group, Ltd., 614, A.2d 925, 928 (D.C. 1992). At that moment, the promisee has two options: wait until the breach and then sue, or treat the repudiation itself as a breach and sue for damages. See generally 23 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 63:28 (4th ed. 1993). WMATA terminated the lease and commenced eviction proceedings.

WMATA's action is more than a mere indication that it will fulfill its end of the bargain when the time for performance comes due; rather, it is a breach, in and of its own right. Quik Serve's claim is for actual, not anticipatory, breach of contract.

Accordingly, Count III shall be dismissed. The Court need not address Quik Serve's claim for a preliminary injunction and their accompanying motion because it has become moot.

## CONCLUSION

For the foregoing reasons, the Court grants both WMATA's motions to dismiss, or in the alternative, motion for summary judgment in Case No. 04-687 and Case No. 04-838. Furthermore, Quik Serve's motion for preliminary injunction will be denied as moot.

A separate Order shall issue this date


Signed by Royce C. Lamberth, United States District Judge, April 28, 2006.